# EXHIBIT A

Date Filed 11/28/2025 1:35 PM
Superior Court - Middlesex
Docket Number 2581CV02744

Case 1:25-cv-14002-JCB    Document 1-3    Filed 12/29/25    Page 2 of 23

7

11/28/2025

RECEIVED

**COMMONWEALTH OF MASSACHUSETTS**

**TRIAL COURT**

**SUPERIOR COURT DEPARTMENT**

**MIDDLESEX COUNTY**

**DOCKET NO.: 2581CV02744 (formerly 2552CV000562 / 2552SC000400)**

PHILIBERT KONGTCHEU,
Plaintiff,

v.

DELTA AIR LINES, INC.;
AIR FRANCE–KLM S.A. / SOCIÉTÉ AIR FRANCE;
CLEO LEON;
MIGUEL GARCIA;
WTW GLOBAL AVIATION PARIS,
Defendants.

# FIRST AMENDED COMPLAINT

---

   Plaintiff, Philibert Kongtcheu, proceeding pro se, brings this First Amended Complaint against Defendants Delta Air Lines, Inc., Air France–KLM S.A., Cleo Leon, Miguel Garcia, and WTW Global Aviation Paris, for violations of European and U.S. aviation consumer protection laws, the Montreal Convention, Massachusetts consumer protection statutes, common law negligence, fraudulent misrepresentation, civil conspiracy, and related causes of action.

NH

## I. **PARTIES**

1. Plaintiff, PHILIBERT KONGTCHEU, is an individual residing at 195 Binney
   Street, Apartment 2311, Cambridge, Massachusetts. At all relevant times, Plaintiff
   was a ticketed and confirmed passenger on an international itinerary beginning in
   Boston and continuing to Paris and Istanbul.

2. Defendant DELTA AIR LINES, INC. ("Delta") is a corporation headquartered in
   Atlanta, Georgia, doing business in Massachusetts and operating flights
   originating at Boston Logan International Airport.

3. Defendant SOCIÉTÉ AIR FRANCE ("Air France") is a foreign corporation
   headquartered in France, operating flights from Boston Logan Airport and
   conducting extensive commercial activity in Massachusetts.

4. Defendant CLEO LEON is, upon information and belief, an employee and
   claims-resolution specialist of Air France. Defendant Cleo Leon is sued in an
   individual capacity and in a professional capacity. Air France is jointly and
   severally liable for all acts she undertook within the scope of employment under
   the doctrine of respondeat superior.

5. Defendant MIGUEL GARCIA is, upon information and belief, an employee and
   claims-resolution specialist of Air France. Defendant Miguel Garcia is sued in an
   individual capacity and in a professional capacity. Air France is jointly and
   severally liable for his actions within the scope of employment.

6. Defendant WTW Global Aviation Paris. WTW Global Aviation Paris is a business
   unit of Willis Towers Watson, responsible for aviation claims administration,
   including passenger claims for Air France. Although its operations and personnel

connected to this case are based in Paris, France, WTW Global Aviation Paris is part of the Willis Towers Watson corporate structure and is therefore served through:

> Willis Towers Watson US LLC
>
> c/o Corporation Service Company (Registered Agent)
>
> Goodwin Square
>
> 225 Asylum Street, 20th Floor
>
> Hartford, CT 06103

WTW Global Aviation Paris engaged in claim-handling communications directed into Massachusetts, including communications sent by its representatives Alexandre Diallo and Hassina Bekhti, thereby establishing personal jurisdiction in Massachusetts.

## II.  **JURISDICTION AND VENUE**

7.  This Court has jurisdiction because Plaintiff resides in Cambridge, MA, and substantial events giving rise to these claims occurred in Massachusetts and abroad during international carriage originating from Boston Logan International Airport, and estimated damages exceed $50,000. This action began in the Small Claims Section of the Cambridge District Court (Docket No.: 2552SC000400).

8. Because the amount in controversy exceeds the Small Claims jurisdictional limit of $7,000, the court granted Plaintiff's motion on August 26, 2025 to transfer the case from the Small Claims Section to transfer the case to the regular civil docket and on October 30, the District Court granted Plaintiff's motion to transfer the case to the Superior Court.

9. Air France and WTW purposefully directed their claim-handling communications to Plaintiff in Massachusetts, establishing specific personal jurisdiction under the Massachusetts long-arm statute (G.L. c. 223A, § 3).

### III. FACTUAL BACKGROUND

#### A. Plaintiff's Disability and Status as an International Passenger

10. Plaintiff is a mobility-challenged passenger who, at all relevant times, required disabled assistance for safe movement within airport terminals and during boarding and disembarkation.

11. Plaintiff purchased a through-ticketed international itinerary beginning in Boston, Massachusetts, continuing to Paris-Charles de Gaulle Airport ("CDG"), and ultimately to Istanbul. Delta Air Lines, Inc. ("Delta") acted as the marketing and ticketing carrier for the Boston segment. Air France–KLM / Société Air France

("Air France") acted as the operating carrier for the Paris-to-Istanbul segment (Flight AF1390).

**B. February 2, 2025 — Delta Wrongfully Denies Plaintiff Boarding in Boston**

12. On February 2, 2025, Plaintiff arrived at Boston Logan International Airport with a valid and confirmed reservation.

13. Delta wrongfully denied Plaintiff boarding despite complete and valid travel documentation. No lawful basis for denial was provided.

14. This wrongful denial caused Plaintiff to miss his original connection to Istanbul and forced him into a chain of re-accommodation events controlled by Air France.

**C. February 4, 2025 — Air France Cancels AF1390 After Boarding Due to Engine Damage**

15. Plaintiff arrived in Paris after re-accommodation.

16. On February 4, 2025, Plaintiff boarded Air France Flight AF1390 for travel to Istanbul. After all passengers were seated, the aircraft's pilot appeared visibly distressed and announced that the aircraft had suffered engine damage requiring immediate cancellation of the flight.

17. Plaintiff experienced shock, fear, and distress as a result of this announcement and sudden cancellation.

18. Air France rebooked Plaintiff for another AF1390 departure scheduled for the following day.

**D. Air France Lodges Plaintiff in the Ibis Hotel Under Conditions Predictably Unsafe for a Disabled Passenger**

19. After the February 4 cancellation, Air France arranged lodging for Plaintiff at the Ibis Hotel near CDG Airport.

20. Although Plaintiff's rescheduled flight boarding time was 10:05 PM, the hotel required Plaintiff to vacate the room by 12:00 PM (noon). This occurred on both February 4 and February 5.

21. Air France did not request, offer, or arrange extended check-out, nor did it provide any alternative rest facility or accommodation.

22. As a result, Plaintiff—already fatigued, jet-lagged, and physically compromised—was forced into the airport terminal for approximately 10 hours before boarding, without the ability to rest lying down or obtain adequate recovery.

23. Air France knew or reasonably should have known that Plaintiff was mobility-challenged and that extended periods of standing, walking, or navigating the airport without rest posed foreseeable risks of:

    a. fatigue,

    b. instability,

    c. emotional deterioration, and

    d. physical injury.

**E. February 5, 2025 — Disabled Assistance Abuse and Denied Boarding**

24. On February 5, 2025, Plaintiff requested disabled assistance from Air France personnel to reach the departure gate.

25. Air France's assistance personnel yelled at, rushed, and mishandled Plaintiff throughout the transfer process, impairing his ability to safely and promptly reach the gate.

26. As a direct result of Air France's mishandling, Plaintiff arrived at the gate after closure and was denied boarding, despite possessing a timely boarding pass and presenting himself for travel.

**F. February 5–6, 2025 — Plaintiff Suffers Two Falls and Requires Emergency Medical Intervention**

27. During the events described, Plaintiff experienced two separate falls:

    a.  One fall at the Air France-provided Ibis Hotel;

    b.  A second fall within CDG Airport.

28. Emergency French medical services (SAMU) were required to assist Plaintiff.

29. Plaintiff suffered:

    a.  broken teeth,

    b.  facial trauma,

    c.  acute pain,

    d.  continuing risk of medical complications,

    e.  long-term dental and maxillofacial treatment requirements.

30. Plaintiff's medical expenses to date total $14,422.80, with additional projected maxillofacial treatment costs estimated at $6,684.00, in addition to ongoing medical and dental needs.

### G. Post-Incident Claims — Air France and Its Agents Issue False Statements and Misdirect Plaintiff's Claims

31. Upon returning to Boston, Plaintiff submitted compensation claims to Air France (References: C-9281029 and C-9284886).

32. Air France claims agents Cleo Leon and Miguel Garcia responded with false statements, including:

   a. misrepresenting that EC Regulation 261 did not apply,

   b. claiming Plaintiff departed from a non-EU origin despite the relevant flight being CDG → IST,

   c. asserting that receipts were "not distinguishable" despite clear supporting documentation, and

   d. demanding documents already submitted.

33. Air France further misdirected Plaintiff to WTW Global Aviation Paris ("WTW"), whose agent Alexandre Diallo falsely represented that:

   a. an "investigation" was underway (Reference: RC25/136), and

   b. Plaintiff should pursue compensation from Filhet/GIMAP, entities with no legal obligation to compensate passengers under EC 261 or the Montreal Convention.

34. This pattern of misrepresentation caused additional delay, confusion, and distress for Plaintiff.

### H. Regulatory Context Showing Pattern and Knowledge

35. Both Delta and Air France have been repeatedly sanctioned by the U.S. Department of Transportation (DOT), the French DGAC (Directorate General for

Civil Aviation), and the Dutch ILT (Human Environment and Transport Inspectorate) for failing to compensate passengers and failing to comply with EC 261 obligations.

36. These prior enforcement actions placed Air France and Delta on clear notice of their obligations and demonstrate that the misrepresentations in Plaintiff's case were not accidental, but consistent with a broader, documented pattern.

**I. August–September 2025 — Air France Data Breach Compromises Plaintiff's Personal Information**

37. On August 7, 2025, Air France notified Plaintiff of a data breach involving personal information submitted in connection with his claims.

38. On September 3, 2025 and thereafter, Plaintiff received alerts from Boston Medical Center indicating unauthorized access attempts to his MyChart medical record credentials, confirming compromise of his sensitive information.

39. The breach caused significant anxiety, fear of identity misuse, and loss of control over highly sensitive health information.

## IV. <u>CAUSES OF ACTION</u>

**COUNT I — BREACH OF CONTRACT**

(Against Delta Air Lines, Inc. and Air France–KLM / Société Air France)

40. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

41. Delta Air Lines, Inc. ("Delta"), as the marketing and ticketing carrier for travel from Boston to Istanbul via Paris, entered into a binding contract of carriage with Plaintiff.

42. Air France–KLM / Société Air France ("Air France"), as the operating carrier for AF1390 on February 4 and 5, 2025, entered into a contract of carriage with Plaintiff governing the Paris → Istanbul segment and all re-accommodation duties resulting from disruptions.

43. Delta breached its contract by wrongfully denying Plaintiff boarding on February 2, 2025 despite a valid and confirmed reservation, causing missed connections and forcing Plaintiff into cascading disruption.

44. Air France breached its contract by:

    a.  a. Cancelling AF1390 after boarding due to preventable engine maintenance issues;

    b.  b. Failing to provide timely, safe, and disability-appropriate transfer and boarding assistance on February 5, 2025;

    c.  c. Wrongfully denying Plaintiff boarding on February 5, 2025;

    d.  d. Failing to provide adequate hotel accommodation and rest facilities under EC Regulation 261/2004 Articles 8–9;

    e.  e. Failing to pay required compensation and reimbursements under the Montreal Convention and EC 261, which are incorporated into the contract of carriage.

45. Air France's agents (including Cleo Leon and Miguel Garcia), acting within the scope of employment, issued written denials falsely asserting that EC 261 did not apply, further breaching contractual duties.

46. As a direct result of these breaches, Plaintiff suffered financial losses, physical injury, and emotional distress.

## COUNT II — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(Against Delta; Air France; Leon; Garcia)

47. Plaintiff realleges and incorporates all preceding paragraphs.

48. Every contract in Massachusetts includes an implied covenant of good faith and fair dealing. Defendants may not interfere with Plaintiff's right to receive the benefits of the contract.

49. Air France, through agents Leon and Garcia, acted in bad faith by:

    a. Failing to notify Plaintiff of EC 261 applicability as required under EU law and company policy;

    b. Misrepresenting that EC 261 did not apply to the February 4 cancellation or the February 5 denied boarding;

    c. Claiming receipts were "not distinguishable" despite clear evidence to the contrary;

    d. Repeatedly requesting documents already submitted;

    e. Intentionally misdirecting Plaintiff to WTW and Filhet/GIMAP—entities with no liability—thereby obstructing lawful compensation.

50. Delta acted in bad faith by denying boarding, failing to provide assistance afterward, and issuing post hoc positions contradicting established EU and U.S. regulatory obligations.

51. Defendants' actions deprived Plaintiff of the benefit of the bargain.

## COUNT III — BREACH OF CONTRACT / INCORPORATED TERMS UNDER EC REGULATION 261/2004 (Feb. 4 Cancellation)

(Against Air France)

52. Plaintiff incorporates all preceding paragraphs.

53. EC Regulation 261/2004 provisions are expressly incorporated into Air France's contract of carriage, which is enforceable in U.S. courts under a breach-of-contract theory. See Volodarskiy v. Delta Air Lines, 784 F.3d 349 (7th Cir. 2015).

54. On February 4, 2025, AF1390 was cancelled after boarding due to an engine condition that constituted a non-extraordinary circumstance under Sturgeon v. Condor Flugdienst GmbH, Joined Cases C-402/07 & C-432/07; and Nelson v. Lufthansa, C-581/10.

55. Plaintiff is entitled to €600 under Articles 5 and 7. Air France refused payment, breaching the contract.

## COUNT IV — BREACH OF CONTRACT / INCORPORATED TERMS UNDER EC REGULATION 261/2004 (Feb. 5 Denied Boarding)

(Against Air France)

Date Filed 11/28/2025
Superior Court - Middlesex
Docket Number 2581CV02744

56. Plaintiff incorporates all preceding paragraphs.

57. On February 5, 2025, Plaintiff held a valid boarding pass and presented himself for boarding on time.

58. Air France's disabled assistance personnel yelled at and rushed Plaintiff, delaying him until after gate closure, which constitutes involuntary denied boarding under Article 4(3).

59. Plaintiff is entitled to €600 compensation. Air France wrongfully refused payment.

## COUNT V — VIOLATION OF M.G.L. c. 93A (UNFAIR AND DECEPTIVE PRACTICES)

(Against Delta; Air France; Leon; Garcia; WTW)

60. Plaintiff incorporates all preceding paragraphs.

61. Defendants were engaged in "trade or commerce" within the meaning of M.G.L. c. 93A §§ 1 and 9.

62. Defendants committed unfair and deceptive acts by:

   a. Making false statements regarding EC 261 applicability;

   b. Misrepresenting Plaintiff's entitlement to compensation;

   c. Fabricating obstacles ("receipts not distinguishable") to obstruct lawful reimbursement;

   d. Misdirecting Plaintiff to WTW and Filhet/GIMAP, entities with no legal responsibility;

    e.  Asserting false legal positions in court (e.g., EC 261 does not apply) despite clear CJEU precedent;

    f.  Failing to respond in good faith to Plaintiff's 93A demand letter dated April 4, 2025.

63. Defendants' acts were willful and knowing. Treble damages are mandatory under § 9(3).

## COUNT VI — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED)

(Against Air France and WTW)

64. Plaintiff incorporates all preceding paragraphs.

65. Air France owed Plaintiff a duty of reasonable care, enhanced by Plaintiff's known disability.

66. Air France breached this duty by providing hotel accommodations requiring noon checkout despite a 10:05 PM boarding time, foreseeably forcing Plaintiff—sleep-deprived, mobility-limited, and stressed—to remain in the airport terminal for over 10 hours without access to rest.

67. Plaintiff's resulting emotional distress produced physical symptoms, including:

    a.  two falls,

    b.  facial trauma and broken teeth,

    c.  acute anxiety,

    d.  sleep disturbance,

    e.  physical trembling,

  f. cognitive difficulty, and

  g. need for emergency medical intervention.

68. These satisfy the Payton v. Abbott Labs, 386 Mass. 540 (1982) standard.

## COUNT VII — RECKLESS INFLICTION OF EMOTIONAL DISTRESS (RIED)

(Against Air France; Leon; Garcia; WTW)

69. Plaintiff incorporates all preceding paragraphs.

70. Defendants acted with reckless disregard for Plaintiff's safety by:

  a. Knowing of Plaintiff's disability and vulnerability;

  b. Knowingly placing Plaintiff in lodging conditions guaranteed to expose him to harm;

  c. Ignoring foreseeable risks by requiring early checkout;

  d. Compounding harm through repeated misrepresentations.

71. Conduct was extreme, outrageous, and violated the standard set forth in Sena v. Commonwealth, 417 Mass. 250 (1994).

## COUNT VIII — NEGLIGENCE (INADEQUATE LODGING ACCOMMODATIONS)

(Against Air France)

72. Plaintiff incorporates all preceding paragraphs.

73. Air France breached duties under:

74. Common law

75. Montreal Convention Art. 19 (duty to mitigate delay-related harm)

76. EC 261 Articles 8–9 (right to meals, rest, accommodation)

77. ACAA, 49 U.S.C. § 41705 (standard of care for disabled passengers)

78. This claim is pleaded in the alternative and only to the extent not preempted by the Montreal Convention.

79. Air France's negligence directly caused Plaintiff's injuries and emotional harm.

## COUNT IX — BREACH OF CONTRACT / EC 261 RIGHT TO CARE (ARTICLE 9)

(Against Air France)

80. Plaintiff incorporates all preceding paragraphs.

81. Under Article 9, incorporated into the Air France contract, the carrier must provide adequate hotel accommodation and rest.

82. Forcing noon checkout for a 10:05 PM boarding time violates Article 9's "right to care."

83. Plaintiff is entitled to compensation and damages arising from this contractual breach.

## COUNT X — NEGLIGENCE PER SE (ACAA-AS-STANDARD-OF-CARE)

(Against Air France)

84. Plaintiff incorporates all preceding paragraphs.

85. ACAA (49 U.S.C. § 41705) establishes duties toward disabled passengers. While not creating a private right of action, ACAA standards may define reasonable

care. See Love v. Delta, 310 F.3d 1347 (11th Cir. 2002); Segalman v. Southwest

Airlines, 2012 WL 5289309.

86. Air France failed to meet ACAA-defined standards, constituting negligence per

se.

**COUNT XI — NEGLIGENCE (FEB. 6 INJURIES / ASSISTANCE ABUSE)**

(Against Air France; Delta)

87. Plaintiff incorporates all preceding paragraphs.

88. This claim is pleaded only to the extent not preempted by the Montreal

Convention.

89. Air France staff acted negligently and abusively during disabled assistance,

directly causing Plaintiff's falls and injuries.

90. Delta remains jointly and severally liable as the marketing carrier for the

through-ticketed itinerary.

**COUNT XII — MONTREAL CONVENTION ARTICLE 17 (BODILY

INJURY)**

(Against Air France; Delta)

91. Plaintiff incorporates all preceding paragraphs.

92. Plaintiff's falls at the hotel and at CDG constitute "accidents" under Air France v.

Saks, 470 U.S. 392 (1985).

93. Plaintiff is entitled to strict liability damages up to 128,821 Special Drawing

Rights, plus uncapped damages for negligence.

**COUNT XIII — MONTREAL CONVENTION ARTICLE 19 (DELAY)**

(Against Air France; Delta)

94. Plaintiff incorporates all preceding paragraphs.

95. Plaintiff's delayed arrival of over 24 hours resulted from Defendants' failure to take reasonable measures, triggering Art. 19 liability.

**COUNT XIV — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED – ASSISTANCE ABUSE)**

(Against Air France)

96. Plaintiff incorporates all preceding paragraphs.

97. Disabled assistance personnel yelled at, rushed, humiliated, and mishandled Plaintiff, causing physical injury and extreme emotional distress.

98. Such conduct is extreme and outrageous, satisfying Massachusetts IIED standards.

**COUNT XV — IIED (SYSTEMIC MISREPRESENTATION / GASLIGHTING)**

(Against Air France; Leon; Garcia; WTW)

99. Plaintiff incorporates all preceding paragraphs.

100. Defendants knowingly issued false statements about Plaintiff's rights, intentionally obstructing remedies and causing severe emotional distress.

## COUNT XVI — IIED (ENGINE FAILURE ANNOUNCEMENT)

(Against Air France)

101.    Plaintiff incorporates all preceding paragraphs.

102.    The pilot's distressed disclosure of catastrophic engine failure after boarding caused Plaintiff acute emotional trauma.

## COUNT XVII — FRAUDULENT MISREPRESENTATION

(Against Air France; Leon; Garcia; WTW)

103.    Plaintiff incorporates all preceding paragraphs.

104.    Defendants made knowingly false statements regarding:

    a.  EC 261 applicability,

    b.  compensation obligations, and

    c.  the existence of an insurer "investigation."

105.    Defendants intended Plaintiff to rely on these misrepresentations.

106.    Plaintiff reasonably relied on them, causing financial loss and emotional harm.

107.    This count satisfies Rule 9(b) because:

    a.  The specific speakers (Leon, Garcia, Diallo) are identified;

    b.  Dates and content of statements are known;

    c.

    d.  Documents are attached or available.

## COUNT XVIII — CIVIL CONSPIRACY (COMMON DESIGN)

(Against Air France; WTW; Filhet/GIMAP; Leon; Garcia; Diallo)

108.    Plaintiff incorporates all preceding paragraphs.

109.    Defendants engaged in a common design to misdirect Plaintiff, obstruct
compensation, and circulate mutually reinforcing falsehoods.

110.    This coordinated conduct caused delay, financial loss, and emotional distress.

## COUNT XIX — NEGLIGENCE (DATA SECURITY BREACH)

(Against Air France)

111.    Plaintiff incorporates all preceding paragraphs.

112.    Air France owed a duty of care under:

    a.  Common law

    b.  GDPR

    c.  Massachusetts Data Security Regulations (201 CMR 17.00) to safeguard
Plaintiff's personal data.

113.    Air France breached this duty, causing Plaintiff's MyChart account to be
compromised.

114.    Upon information and belief, the breach involved data submitted through Air
France's claim-handling system, including personal identifiers and
medical-related documentation.

## COUNT XX — VIOLATION OF M.G.L. c. 93A (DATA SECURITY PRACTICES)

(Against Air France)

115.    Plaintiff incorporates all preceding paragraphs.

116.   Air France's failure to safeguard personal data constitutes an unfair and deceptive practice under c. 93A.

117.   Upon information and belief, the breach involved data submitted through Air France's claim-handling system, including personal identifiers and medical-related documentation.

118.   Plaintiff suffered actual harm and is entitled to statutory and treble damages.

## V. DAMAGES

119.   Plaintiff has incurred the following damages:

- EC 261 statutory compensation: €1,200.

- Medical expenses to date: $14,422.80.

- Future medical expenses: crowns and continuing treatment.

- Pain and suffering and severe emotional distress.

- Economic losses including unreimbursed out-of-pocket costs.

- Treble damages under M.G.L. c. 93A.

- Damages under the Montreal Convention up to 128,821 SDR (~$170,000) plus additional liability for negligence.

- Punitive damages in the range of relevant regulatory bodies' fines ( US DOT $37,377 per violation per day)

## VI. <u>JURY DEMAND</u>

120.    Pursuant to Massachusetts Rules of Civil Procedure Rule 38, Plaintiff demands a trial by jury on all issues triable of right by jury.

## VII. <u>PRAYER FOR RELIEF</u>

121.    WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against Defendants on all counts.

2. Award compensatory damages, statutory damages under EC 261, and damages under the Montreal Convention.

3. Award treble damages under M.G.L. c. 93A.

4. Award punitive damages where applicable.

5. Award reasonable attorney's fees, costs, and interest.

6. Issue injunctive relief requiring Defendants to pay pending medical expenses and cease deceptive practices and comply with applicable law.

7. Grant such further relief as this Court deems just and proper.

Respectfully submitted,

Dated: <u>November 28th , 2025</u>

/s/ Philibert F. Kongtcheu

Plaintiff, Pro Se Plaintiff